### A. A. Blasingame v. The State.

No. 3154.　Decided February 15, 1905.

**1.—Local Option—Charge of Court—Place of Sale.**

A charge of the court which authorized a conviction in a local option case regardless as to where the sale of the intoxicating liquor was made is erroneous.

**2.—Same—Profit—Agency.**

See opinion for evidence which did not authorize the court to submit in his charge the issues of profit or agency.

**3.—Same—Special Charge for State.**

See opinion for special charge of the county attorney which was erroneous, as it assumed agency in the absence of testimony and was uncertain as to what particular agency it assumed.

**4.—Same—Conflict Between the Requested and the Main Charge.**

Where the requested charges of appellant, on his trial for a violation of the local option law, stated correct legal rules, as applicable to the facts of the case, but were controverted by the main charge of the court, there was error.

**5.—Same—Fact Case.**

See opinion for facts which were insufficient to sustain a conviction for a violation of the local option law, constituted no sale, and a charge to acquit the defendant should have been given to the jury.

**6.—Same—Other Transactions.**

Where the transactions showed that the defendant, who was charged with a specific violation of the local option law, had ordered whisky for others in a legitimate way at different times, it was error to admit these transactions in evidence against the defendant.

**7.—Same—Malicious Prosecution.**

See opinion for comment on malicious and frivolous prosecution.

Appeal from the County Court of Kaufman. Tried below before Hon. H. M. Casnahan.

Appeal from a conviction of a violation of the local option law; penalty, a fine of $25 and twenty days confinement in the county jail.

The opinion states the case.

*S. J. Osborne* and *Gossett, Terry & Brown,* for appellant.—Kirby v. State, 80 S. W. Rep., 1007; Bottoms v. State, 73 Id., 16; Taylor v. State, 17 Texas Crim. App., 46; Sinclair v. State, 77 S. W. Rep., 621; Grimes v. State, 72 S. W. Rep., 862; Belt v. State, 78 Id., 933; Vanarsdale v. State, 34 S. W. Rep., 931; Ray v. State, 79 Id., 535.

*Howard Martin,* Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of violating the local option law, and his punishment assessed at a fine of $25 and twenty days confinement in the county jail.

We desire to state the case fully, in order that all the questions raised may be presented and discussed.

Andy Brewer, the alleged purchaser, testified, substantially, as follows: "I did not buy any whisky from defendant Blasingame. Sometime in December, 1903, I gave him $1.50 and requested that he order for me one half-gallon of whisky, which he agreed to do. About a week or ten days after this I called for the whisky, and was told by defendant, that he had some pressing calls for whisky for medical purposes, and had let some parties have the whisky that had been ordered for me, except about a pint that remained in the jug. He gave the money back to me that I had given him to pay for the whisky, and gave me the jug containing a little more than a pint, and stated he made no charge for the remainder left, and apologized for disposing of my whisky. Defendant made no charge for placing the order for the whisky, but did it at my request. My wife was expecting to be sick within a few days from the time that I made the order for the whisky. She had been confined at the time I got the remainder of the whisky from defendant. I had procured a pint from Uncle Henry Brewer, was the reason I did not call for the whisky defendant ordered for me sooner."

Ocie Reasonover, another witness for the State, testified: "I was a clerk in the drugstore of the Barnett Drug Company, of which defendant is manager. Sometime in December, 1903, Andy Brewer, in my presence gave to defendant some money (don't know what amount) and asked defendant to order for him (Brewer) a half-gallon of whisky, which order was made by defendant through the Texas Drug Company. Sometime before December, 1903, there was a big saloon man from Dallas in defendant's drugstore, and told him he could arrange to furnish whisky, whereby defendant could make 25 cents on each gallon of whisky he would order. The Dallas man said to defendant, 'when you order whisky and collect $1.50 for the same, order whisky costing $1.25. I don't know the name of the Dallas saloon man, and don't remember the time when he was there, nor any parties present when this conversation took place between defendant and the Dallas saloon man." This witness also testified to another whisky transaction between appellant and one McIntyre, and also to a transaction of a similar character with one Thompson. This witness further stated that when defendant took Brewer's order and money, he told Brewer he would order the whisky for him, but that it must be "on the q. t." (which we will presume, though there is no proof of this, meant on the quiet); that the parties would take the same out at the back door; that he was present when Brewer came for his whisky, and defendant delivered to Brewer a half gallon jug, and the seal was unbroken. This witness further stated that he was not specially unfriendly to defendant; that he spoke to him when he spoke to witness; that he was discharged by defendant as a

clerk in said store in January, 1904; when discharged he told defendant and others that he was going before the grand jury, and have defendant prosecuted for selling whisky; and that he did go before the grand jury at the next term of the district court.   That the orders to which he had testified came through the Texas Drug Company of Dallas, and were charged up with other goods.   "One reason why I was discharged by defendant was because I cancelled an order for whisky which defendant made for Dr. Still.

J. W. Thompson testified, for the State, that he made an order through appellant for a gallon of whisky from Dallas, and gave appellant the money to pay for the whisky, and he agreed to order the same. About a week after this he called at the drugstore to get his whisky. "Defendant was absent, and Ocie Reasonover, and I opened the jug; that I did not like the smell of it and declined to take it."   That subsequent to this he met defendant and told him he would not take the whisky, and defendant gave him his money back.   This witness further testified that sometime after this he was in the drugstore of appellant, and he saw a jug in a sack under the prescription case, and had an idea it was whisky.   Defendant was not in the house, and he picked up the sack and carried it out through the front door, and put it in his wagon; that he never paid defendant anything for the jug; he never asked him for the pay, and there was no understanding about witness paying for it at all.   "I simply took it; that he had an account with defendant's drugstore, which account he ·paid, but if the jug of whisky was ever charged to witness he had no knowledge of it."   This was all the testimany for the State.

Appellant testified in his own behalf that he was the manager and had charge of the Barnett Company's drug business at Kemp.   He testified about as the other witnesses as to ordering the whisky from Texas Drug Company for McIntyre and Thompson, and also testified to making some orders for two or three other parties, which orders were made in a similar manner.   He further stated as to the jug of whisky taken by Thompson from the drugstore, that sometime after Thompson refused to take the jug of whisky, appellant ordered for him, he saw Thompson coming out of the front of the store with a sack, containing what appeared to be a jug, and he afterwards learned Thompson had taken the jug of whisky, he had under the prescription case; that he did not know at that time what Thompson had in the package.   Afterwards he learned that he had taken a jug of whisky.   Having had trouble with Thompson about the jug of whisky, he had ordered for him (he not having taken it) he did not say anything to him about taking the jug; that he did not charge the whisky to him in his account, and he never paid anything for it; that he decided, on account of the previous trouble with Thompson, just to let the matter pass.   He relates the circumstances with reference to the alleged sale to Andy Brewer substantially as that witness did; that he sent the money $1.50 to pay for the whisky and placed the order with the Texas Drug Company for Brewer.   After a few days

the jug was received; that Brewer did not call for it for several days. In the meantime he had some pressing calls for whisky. Dodge Mason came to him and said several members of his family were sick with la grippe, which he knew to be a fact, and asked him if he had any whisky. He told him he had none, but there was half-gallon jug there he had ordered for Andy Brewer, and he had not called for it. Mason insisted that he let him have some of the whisky out of the Brewer jug, as the doctor advised whisky was needed immediately; that he opened Brewer's jug and let Mason have whisky out of it twice—making no charge to Mason for the whisky. A few days later Brewer called for his jug, and he explained to him the circumstances under which he had opened his jug and disposed of all the whisky except about a pint remaining in the jug; that he gave Brewer his money back, and made him a present of the remainder in the jug and apologized to him for having used a part of his whisky. Brewer took the whisky in the jug, and he returned the money to him. Both Brewer and appellant contradict Reasonover as to the seal of the jug being intact when he got it, and also as to his going out at the back door. They also testify that Reasonover was not near enough to have heard any conversation when Brewer made the order; that he ordered all of his whisky through the Texas Drug Company, with whom he dealt; that he had no arrangements or agreement with the Texas Drug Company, whereby he was paid for orders for whisky placed with them; that he had no agency for said Drug Company or anybody else to sell whisky for them in the town of Kemp. That when he discharged Reasonover he then threatened to go before the grand jury and indict him for selling whisky. That four or five orders made by him were all the orders for whisky he made during the year 1903, and were made purely as a matter of accommodation for the parties named. That he was then 38 years old and had never been charged with the violation of any law of the State. This is a substantial statement of all the testimony.

On this stated case, the court gave the following charge: "If the jury believe from the evidence beyond a reasonable doubt, that in Kaufman County, Texas, on or about the time alleged in the indictment, the defendant A. A. Blasingame, received from one Andy Brewer, the sum of one dollar and fifty cents, and in consideration thereof agreed to order for the said Brewer one-half gallon of intoxicating liquor to be shipped into Kemp, Kaufman County, Texas, and to be delivered by him to said Brewer, and if you so further believe that in pursuance of such agreement, the defendant procured a half gallon of intoxicating liquor to be shipped into Kemp and delivered the same to said Brewer, and if you further believe that the defendant was pecuniarily interested in such transaction, or received any profit therefrom, he would be guilty of selling intoxicating liquor, * * * Or if you believe from the evidence beyond a reasonable doubt, that at the time such arrangement was made, if it were made, the defendant was acting as the agent of the Texas Drug Company, made this sale of intoxicating liquor for

them in Kaufman county, or aided them in making such sale, if any such were made, he would be guilty, whether he received any profit or not." This charge was objected to, among other things, that it authorizes a conviction regardless of where the sale was consummated. We think this objection was well taken. It was further objected that there was no testimony whatever tending to show that appellant was pecuniarily interested in the sale; that all the testimony was to the contrary, and that it was not competent for the court to give a charge, in the absence of testimony to support it. This contention was correct. It was also objected that there was no testimony tending to show that defendant was acting as the agent of the Texas Drug Company in the sale of said liquor to Brewer. In our opinion this objection was well taken. A careful perusal of the testimony fails to show that appellant at any time assumed to act as the agent of the Texas Drug Company in the sale of the liquor. The State's evidence shows the contrary, as well as the testimony for the defendant. If it be conceded that the testimony of Reasonover is true, which for the purpose of the charge must be assumed, then all that could be remotely urged as having this tendency is a conversation he testified he heard with the "big Dallas saloon man." However, no connection is shown between the sale and this Dallas saloon man. The sale was made by the Texas Drug Company, without any privity as to the saloon man, whoever he may be. The fact that appellant may have stated to Brewer that the transaction must be on the quiet, in the face of the testimony, would neither tend to show agency on his part for the Texas Drug Company, or that he was pecuniarily interested in the sale.

The court appears to have been very liberal in the way of giving charges. For, besides the court's charge he gave one requested by the county attorney, James Woods, for the State; and also gave all of the charges (some three or four in number) asked by appellant. The charge given at the request of the county attorney is, as follows: "The jury are charged that, if they believe that if the agency of defendant, in procuring and delivering the intoxicating liquor in this case by defendant to the purchaser Andy Brewer was simulated and colorable, and its purpose was to hide the actual sale of the said intoxicating liquor to Andy Brewer, and that the defendant sold the same to said Brewer, then he would be guilty under the law as charged in the indictment." It was objected that this charge assumed some agency in the absence of testimony, but that it was uncertain whether the agency assumed was for the Texas Drug Company or Brewer. We think this charge is subject to both criticisms. Moreover, we fail to find in the record any testimony showing any simulation on the part of appellant with reference to this transaction.

The charges requested by appellant were applicable to the facts of this case, and gave a correct legal rule, and were properly given. The only difficulty in regard to this matter is that they contravened the charges given by the court. But in our opinion, as intimated before,

this case should not have gone to the jury on any instruction, save one, to find defendant not guilty. It has been repeatedly held by this court, that where the evidence shows appellant simply made an order for whisky for another person, who furnished the money to pay for the same, and no testimony tending to show that he acted in any respect as the agent of the seller, a conviction could not be maintained. The facts of this case not only show no agency on the part of appellant for the Texas Drug Company in the transaction, but it is further shown in the result, that Brewer never paid anything for the whisky; that what whisky he got was simply given to him by appellant.

In Bottoms v. State, 73 S. W. Rep., 16, an opinion by Judge Davidson, it was held, following a long line of decisions, that it was no offense in this State in a local option territory to give whisky to another. Without citing other authorities, it occurs to us that the facts of this case come clearly within the facts and the rule laid down in Kirby v. State, 80 S. W. Rep., 1007. There Kirby, who lived in a local option territory, filled out an order on one Williams, who was running a saloon in Paris, Lamar County, Texas, for twelve bottles of beer. He gave defendant $1.10 to pay for the beer and 40 cents to pay the express charges and for keeping the beer cool in appellant's icebox. Appellant issued to witness twelve checks, each calling for a bottle of beer, and at stated intervals prosecutor would come and get said beer on said checks. Prosecutor swore that he did not buy any beer of defendant, but that he bought it of Wood Williams, and that Williams sent the beer by express. Defendant swore that he did not sell him any beer, but acted as the prosecutor's agent in sending the money. The money was sent, and the beer received by express. In that case, Judge Brooks, speaking for the court said: "Under the authorities we do not believe this constitutes a sale in violation of the local option law in Fannin County." The facts here are not as strong as the facts in that case. There appellant kept a cold-storage. Here appellant kept a drugstore: an honorable calling. He was requested by a man whose wife was about to be confined, to send for a half-gallon of whisky for him: prosecutor furnishing the money for that purpose. All that he did was to make the order for this whisky on the Texas Drug Company, not on a saloon. And even after he received the whisky, which was sent in his care, on an exigency he used a portion of it, not by way of sale, but gave it to a party who needed it at the time. He returned the money he had received from prosecutor, and gave him what was left of the whisky. The evidence introduced of other sales, far from showing any system of making illegal sales, indicated legitimate transactions. This testimony, which was complained of, should have been excluded, as it is impossible to conceive how legitimate transactions would tend to show an illegal sale of whisky. If a citizen of this State is to be impaled on testimony of this character and sent to jail, then indeed are we in a deplorable condition. This very record shows, that this indictment was brought about purely on the malice of the witness Reasonover, because he was discharged, yet his

testimony does not show that this was an illegal transaction. But even after conviction, it occurs to us with the affidavits of more than thirty respectable citizens testifying as to the good character and law-abiding qualities of appellant, that he was engaged in the drug business and in no manner had he ever been engaged in the business of selling intoxicating liquors in Kemp in violation of the local option law, and does not bear such reputation, that the court should have carefully reviewed the testimony, and should have granted appellant a new trial without forcing him to remain under the ban of conviction of violating the local option law until his appeal could be heard in this court. We have no patience with the sneakthief who goes into local option territory, and who, the proof shows, has violated the law, but we should be careful not to condemn without evidence, one who has simply been accused of such a crime. It is a good thing to vindicate the law, and bring the guilty to justice but it is equally as noble to protect the innocent.

Because of the misdirection of the court, and because the evidence does not sustain this conviction, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

BROOKS, JUDGE.—The evidence is not sufficient. I express no opinion as to other matters discussed.